IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TRANSCANADA USA OPERATIONS, INC., | § § § | |
| Plaintiff, | § § | |
| v. | § § | |
| MICHELS CORPORATION, | § § | |
| Defendant/Third-Party Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. H-18-4483 |
| PIPE DOGS, INC., | § § | |
| Third-Party Defendant/ Third-Party Plaintiff | § § § | |
| v. | § § | |
| REACTOR RESOURCES LLC, | § § | |
| Third-Party Defendant. | § | |

**MEMORANDUM AND ORDER**

Pending are Third-Party Defendant Pipe Dogs, Inc.'s Motion to Dismiss for Failure to Join a Required Party, Motion to Dismiss Plaintiff TransCanada USA Operations Inc.'s Complaint for Failure to State a Claim, and Motion for a More Definite Statement (Document No. 19) and Reactor Resources's 12(b)(6) Motion to Dismiss and, in the Alternative, 12(e) Motion for More Definite Statement (Document No. 27). After considering the motions, responses, replies, and applicable law, the Court concludes as follows.

## I. Background

Plaintiff TransCanada USA Operations, Inc. ("TransCanada") maintains crude oil pipelines, including portions of the Keystone pipeline.[1] On November 9, 2012, TransCanada and Defendant Michels Corporation ("Michels") entered into a Master Construction and Maintenance Services Agreement for US Pipeline Construction and Maintenance Services (the "MSA").[2] As part of the MSA, Michels agreed that it would be liable to TransCanada for "any and all losses, injuries, damages, fines, penalties, costs and expenses incurred by or suffered upon" TransCanada "in any manner directly or indirectly caused, occasioned, attributable or contributed to in whole or in part by reason of (i) any breach or non-compliance with any term or provision of this Contract, . . . or (ii) any act or omission including as a result of fault, negligence or willful misconduct, whether active or passive, of Contractor or any Subcontractor."[3] Michels also agreed that it would defend and indemnify TransCanada and would hold TransCanada harmless "from and against any and all Claims."[4]

---

[1] Document No. 4 ¶ 2 (Pl.'s First Am. Compl.).

[2] Id. ¶ 8.

[3] Id. ¶ 16.

[4] Id. ¶ 17.

Pursuant to the MSA, TransCanada and Michels entered into a Release Order for Michels to investigate leaks in part of TransCanada's pipeline and to provide a vendor to locate leaks.[5] According to Michels, TransCanada elected to use Pipe Dogs, Inc. ("Pipe Dogs") to locate any leaks and determined that Michels should subcontract with Pipe Dogs for these services due to Michels's ongoing presence at the pipeline location.[6]

Michels entered into a Professional Service Agreement ("PSA") with Pipe Dogs for the pipe leak investigation.[7] Pipe Dogs performed the investigation in May 2016, and Michels alleges that the investigation was done under the sole supervision of TransCanada.[8] To perform this leak detection service, dimethyl sulfide gas ("DMS") was released into the pipeline, and dogs that are specially trained to detect the characteristic smell of the gas at low concentrations walked along sections of the pipeline and would alert their handlers if they detected the scent.[9] TransCanada alleges that when Pipe Dogs released quantities of DMS into the specified section of the pipeline, "an excess amount of [DMS] was negligently injected . . . [which] ultimately

---

[5] Id. ¶¶ 9-10.

[6] Document No. 15 ¶¶ 10-11 (Michels's Third-Party Compl.).

[7] Id. ¶ 12.

[8] Id. ¶¶ 16-18.

[9] Document No. 4 ¶ 12.

3

contaminated certain batches of crude oil shipped on the Keystone pipeline."[10] TransCanada then paid a claim for damages based on the contaminated oil.[11] TransCanada informed Michels of the claim and sought payment from Michels pursuant to the MSA.[12] TransCanada alleges that Michels did not resolve the claim or indemnify TransCanada for its payment.[13] Consequently, TransCanada filed its suit alleging a claim against Michels for breach of the MSA.[14]

Michels answered and filed its Third-Party Complaint against Pipe Dogs, alleging claims for indemnification pursuant to the PSA and for negligence.[15] Pipe Dogs then filed its own Third-Party Complaint against Reactor Resources, LLC ("Reactor Resources").[16] Pipe Dogs alleges that it contracted with Reactor Resources to formulate and inject the DMS and that Reactor Resources, not Pipe Dogs, was the entity that injected the DMS into the pipeline before

---

[10] Id. ¶¶ 11, 13.

[11] Id. ¶¶ 14, 18.

[12] Id. ¶ 15; Document No. 15 ¶ 19.

[13] Document No. 4 ¶¶ 15, 18.

[14] Id. ¶ 20.

[15] Document No. 10; Document No. 15. Section 10 of the PSA states that Pipe Dogs "shall indemnify and hold harmless Michels . . . from and against any and all losses, damages, claims, liability, and costs and expenses incidental thereto . . . arising out of . . . negligent acts, negligent omissions or willful misconduct of [Pipe Dogs] in the performance of the Services . . . ." Document 15 ¶ 13.

[16] Document No. 20 (Pipe Dogs's Third-Party Compl.).

4

Pipe Dogs performed its leak detection services in May 2016.[17] Pipe Dogs alleges against Reactor Resources negligent workmanship, negligent hiring, breach of warranty, delegation of non-delegable duty, and seeks contribution.

II. <u>Pipe Dogs's Motions</u>

A. <u>Failure to Join a Required Party</u>

Pipe Dogs argues that TransCanada's suit should be dismissed pursuant to Rule 12(b)(7) because "non-party Reactor Resources LLC is required for the resolution of plaintiff's and third-party plaintiff's suits but cannot be joined."[18] As if to prove itself wrong, however, one day after filing its Rule 12(b)(7) motion, Pipe Dogs did in fact join Reactor Resources as a party to this case by naming it the third-party defendant in Pipe Dogs's third-party action.[19] Reactor Resources thereupon entered its appearance and filed a Rule 12(b)(6) motion to dismiss Pipe Dogs's third-party claims.

Contrary to the contention of Pipe Dogs, its joinder of Reactor Resources as a third-party defendant in its own cross action does not destroy the Court's diversity jurisdiction. Even

---

[17] <u>Id.</u> ¶¶ 11, 20, 22.

[18] Document No. 19 at 2.

[19] Document No. 20.

though Reactor Resources is not diverse from the original Plaintiff TransCanada, the Court has supplemental jurisdiction over Pipe Dogs's third-party action under 28 U.S.C. § 1367(a). The exceptions to § 1367(a) found in § 1367(b) and (c) do not apply. The Fifth Circuit has held that "'plaintiff' in § 1367(b) refers to the original plaintiff in the action--not to a defendant that happens also to be a counter-plaintiff, cross-plaintiff, or third-party-plaintiff." State Nat'l Ins. Co. v. Yates, 391 F.3d 577, 580 (5th Cir. 2004). TransCanada, the original Plaintiff, is not suing Reactor Resources and is not required to do so. Third-Party Plaintiff Pipe Dogs cannot destroy the Court's diversity jurisdiction by its third-party action. Id. Accordingly, Pipe Dogs's motion to dismiss for failure to join a required party is denied.

B.   Motion to Dismiss and Motion for a More Definite Statement

Pipe Dogs moves to dismiss TransCanada's suit for failure to state a claim against Pipe Dogs on which relief can be granted. However, TransCanada has not sued Pipe Dogs and is not seeking *any* relief against Pipe Dogs. TransCanada's claim is solely against Michels, and alleges that Michels breached the MSA between TransCanada and Michels. Michels has joined issue by filing a responsive answer. Pipe Dogs's Rule 12(b)(6) motion to dismiss TransCanada's suit against Michels has no merit and is denied.

Pipe Dogs also moves for an order requiring Michels to file a more definite statement under Rule 12(e).[20] "A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). A motion for a more definite statement should be denied where the movant is reasonably able to respond to the pleading. Mitchell v. E-Z Way Towers, Inc., 269 F.2d 126, 131-32 (5th Cir. 1959); Benavides v. Laredo Med. Ctr., No. L-08-105, 2009 WL 1755004, at *8 (S.D. Tex. June 18, 2009) (Alvarez, J.).

The Court finds that Michels's Third-Party Complaint details the portions of the PSA between Michels and Pipe Dogs upon which Michels relies for its claim against Pipe Dogs for indemnity, and--with its attachments of both TransCanada's First Amended Complaint and Michels's responsive Answer--adequately pleads the basis for its negligence claim against Pipe Dogs. In no manner is Michels's pleading "so vague or ambiguous" that Pipe Dogs cannot reasonably prepare a response.

Pipe Dogs complains that the specific amount of damages sought by TransCanada from Michels, and hence by Michels from Pipe Dogs, has been redacted from Michels's pleading, and therefore Pipe Dogs does not know what damages are being sought from it. Pipe Dogs can determine this during pretrial discovery as TransCanada's case

---

[20] Document No. 19 at 10.

against Michels proceeds. Arista Records LLC v. Greubel, 453 F. Supp. 2d 961, 972 (N.D. Tex. 2006) (damages are a "matter[] that can be clarified and developed during discovery, not [a] matter[] that impede[s] [its] ability to form a responsive pleading"). Pipe Dogs's Rule 12(e) motion for a more definite statement is denied.

III. Reactor Resources's Motion to Dismiss

Reactor Resources moves to dismiss Pipe Dogs's Third-Party Complaint for failure to state a claim and in the alternative moves for a more definite statement.

A. Legal Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974), *abrogated on other grounds by* Harlow v. Fitzgerald, 102 S. Ct. 2727 (1982). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded

8

facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Twombly, 127 S. Ct. at 1964-65.

B. <u>Discussion</u>

   1. Counts I and II: Negligent Workmanship and Negligent Hiring

Pipe Dogs alleges against Reactor Resources negligent workmanship and negligent hiring in the course and scope of its activities to formulate, supply, and inject chemicals into the Keystone Pipeline. Reactor Resources complains that the allegations fail to state a plausible claim.[21] Pipe Dogs's

---

[21] Reactor Resources also moves to dismiss Pipe Dogs's negligence-based claims as barred by the two-year statute of limitations for negligence actions in Texas. Pipe Dogs, however,

9

allegations, however, are not made in a vacuum. Pipe Dogs attaches to its Third-Party Complaint a copy of TransCanada's First Amended Complaint and, as well, a copy of Michels's Third-Party Complaint. TransCanada in its First Amended Complaint alleges that an excess amount of DMS was negligently injected into the pipeline, that the excess DMS ultimately contaminated certain batches of crude oil shipped on the Keystone Pipeline, and that TransCanada received and paid a claim as a result of the contaminated batches of crude oil. Pipe Dogs was alleged to have been the subcontractor that released excessive quantities of DMS into the affected segment of the pipeline. In turn, Michels in its Third-Party Complaint against Pipe Dogs alleges that TransCanada had notified Michels of a third-party claim for property damage allegedly resulting from Pipe Dogs's negligent performance of the leak detection services work on the Keystone Pipeline and that Michels, if it is liable for having injected an excess amount of DMS into the pipeline that contaminated batches of crude oil, should recover from Pipe Dogs

---

is not asserting a claim for property damage due to negligence but rather a legal injury due to Michels's suit. Thus, the statute of limitations for Pipe Dogs's claim did not begin to accrue until Pipe Dogs was sued by Michels, less than two years before Pipe Dogs filed its Third-Party Complaint. *See* Murray v. San Jacinto Agency, Inc., 800 S.W.2d 826, 828 (Tex. 1990) ("For the purposes of application of statute of limitations, a cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy."); Moreno v. Sterling Drug, Inc., 787 S.W.2d 348, 351 (Tex. 1990) ("[A] cause of action can generally be said to accrue when the wrongful act effects an injury.").

10

its damages arising from Pipe Dogs's failure to exercise reasonable care and caution and to conduct its work on the Keystone Pipeline in a manner consistent with the standard of care set forth in Section 8 of the PSA.

Against this rather fulsome background and array of facts, Pipe Dogs in its third-party action against Reactor Resources in turn alleges that it was Reactor Resources which in fact had the responsibility for the formulation of the DMS and the injection of appropriate amounts of DMS into the Keystone Pipeline and, if excess amounts were negligently injected causing contamination of crude oil, Reactor Resources's negligence in the formulation and/or the injection of the DMS was the proximate cause of the injury. In making its allegations, Pipe Dogs has alleged negligent workmanship, that is the failure to exercise reasonable care in the course and scope of Reactor Resources's work to formulate, supply, and inject chemicals into the Keystone Pipeline and, as well, and perhaps due to the expertise claimed for itself by Reactor Resources, that Reactor Resources failed to exercise ordinary care in the course and scope of its hiring of employees to formulate, supply, and inject the chemicals.

These are only pleadings. Pleadings are not required to detail all of the "ins-and-outs" of what Reactor Resources did that allegedly caused contamination of the batches of crude oil about which TransCanada complains. The details will be explored during

the course of pretrial discovery by capable counsel for all parties. A Rule 12(b)(6) motion "is viewed with disfavor and is rarely granted." Harrington v. State Farm Fire & Cas. Co., 563 F.3d 141, 147 (5th Cir. 2009) (quotation marks and citation omitted). Pipe Dogs's third-party action alleges a plausible claim above the speculative level, and adequately informs Reactor Resources of what is alleged against it. The motion to dismiss is denied.

2. Count III: Breach of Warranty

Pipe Dogs alleges that Reactor Resources breached the implied warranty of merchantability, implied warranty of fitness, and an implied warranty of adequacy (Spearin doctrine) "by not properly providing appropriate products and services in the course and scope of its activities to formulate, supply, and inject chemicals into the Keystone Pipeline as a subcontractor."[22]

Reactor Resources argues that Pipe Dogs fails to allege any facts showing that the DMS was unmerchantable or unfit and thus does not state a plausible claim for breach of the implied warranty of merchantability. In order to state a claim in Texas for breach of the implied warranty of merchantability, "a plaintiff must plead facts that 'the product contained a defect that renders it unfit for its ordinary purpose, the defect existed when it left the

---
[22] Document No. 20 ¶¶ 41-42.

12

manufacturer's possession, and that the defect caused the plaintiff to suffer injury." Adams v. Nissan N. Am., Inc., 395 F. Supp. 3d 838, 854 (S.D. Tex. 2018) (Ellison, J.) (adopting in full Report and Recommendation of the Magistrate Judge) (citation omitted); see also TEX. BUS. & COM. CODE § 2.314 ("[A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."). Pipe Dogs alleges that Reactor Resources provided and injected the DMS, and provided expert opinions on how to handle the chemical in the pipeline, and that the injection of the DMS by Reactor Resources was a proximate cause of the damage claimed by TransCanada for which Michels now seeks to hold Pipe Dogs liable.[23] At this early stage of Pipe Dogs's involvement in the case, Pipe Dogs has pled sufficient facts to state a claim for breach of the implied warranty of merchantability. See Lopez v. Glove Coaters, Inc., No. H-13-0448, 2013 WL 12137775, at *3 n.7 (S.D. Tex. May 2, 2013) ("Although Plaintiff's complaint is not a model of clarity or detail, his theory is simple. At this time, nothing further is required for Plaintiff to state a claim for relief that is 'plausible on its face.'") (citation omitted) (denying motion to dismiss breach of warranty claim when plaintiff alleged cut-resistant glove did not resist being pierced even though plaintiff did not identify the defect or specifically show how the glove

---

[23] Id. ¶¶ 11, 14, 20, 42-44.

failed). Accordingly, Reactor Resources's motion to dismiss Pipe Dogs's claim for breach of the implied warranty of merchantability is denied.

The implied warranty of fitness for a particular purpose arises where "the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." TEX. BUS. & COM. CODE § 2.315. Pipe Dogs alleges that Reactor Resources "holds itself out as experts in the materials formulated, supplied, and injected into the Keystone Pipeline," that Pipe Dogs, which did not have "adequate expertise," "relied upon the expertise of Reactor Resources to formulate, supply, and inject chemicals into the Keystone Pipeline as a subcontractor," and that Reactor Resources breached the implied warranty of fitness "by not properly providing appropriate products and services in the course and scope of its activities to formulate, supply, and inject chemicals into the Keystone Pipeline."[24] At the pleading stage, this is sufficient to allege a breach of the implied warranty of fitness.

The Spearin doctrine, to which Pipe Dogs refers as an implied warranty of adequacy, provides that "if the contractor is bound to build according to plans and specifications prepared by the owner, the contractor will not be responsible for the consequences of

---

[24] Document No. 20 ¶¶ 48, 50, 49, 42).

defects in the plans and specifications." United States v. Spearin, 39 S. Ct. 59, 61 (1918).[25] Pipe Dogs, however, does not allege that Reactor Resources provided defective plans to Pipe Dogs that Pipe Dogs followed or that Pipe Dogs was bound in any way to follow plans provided by Reactor Resources, such that the Spearin doctrine could arguably be implicated. Pipe Dogs instead alleges that it subcontracted with Reactor Resources for Reactor Resources to formulate, supply, and inject the chemicals into the pipeline and that Reactor Resources was the party that injected the chemicals.[26] Accordingly, Pipe Dogs has not pled facts alleging breach of an implied warranty of adequacy based on the Spearin doctrine.

3. Count IV: Delegation of Non-Delegable Duty

Pipe Dogs's allegation that Reactor Resources delegated "non-delegable duties"[27] fails to plead sufficient facts to state a claim

---

[25] Texas appears to require something more than Spearin--namely, contractual language indicating an actual intent to shift responsibility from the contractor to the owner who provided the defective plans and specifications. See Interstate Contracting Corp. v. City of Dall. Tex., 407 F.3d 708, 720 (5th Cir. 2005) ("We conclude the Texas Supreme Court would require contractual language indicating an intent to shift the burden of risk to the owner in order to find an owner breached a contract by providing defective plans. The contrary rule is simply not well reasoned.").

[26] Document No. 20 ¶¶ 11, 20. In addition, Pipe Dogs further alleges it "did not formulate, supply, or inject any materials" into the pipeline. Id. ¶ 22.

[27] Id. ¶ 47.

15

that is plausible on its face. Reactor Resources's alleged duty was "to formulate, supply, and inject the appropriate chemicals into the Keystone Pipeline," but Pipe Dogs alleges no facts regarding *when* or *how* or *to whom* Reactor Resources wrongfully delegated its "non-delegable duties" to "individuals unqualified to provide appropriate products and services."[28] There must be *something* alleged in a complaint "to raise a right to relief above the speculative level." Twombly, 127 S. Ct. at 1964-65. This claim is dismissed.

4. Count V: Contribution

Pipe Dogs alleges a claim for contribution under the common law and TEX. CIV. PRAC. & REM. CODE § 33.015. "Under Texas law, 'there is no common-law right to contribution.'" Joe Hand Promotions, Inc. v. AIH Alamo Ice House, LLC, No. SA-16-CV-843-XR, 2017 WL 4052176, at *4 (W.D. Tex. Sept. 12, 2017) (citing Casa Ford, Inc. v. Ford Motor Co., 951 S.W.2d 865, 874 (Tex. App.-Texarkana 1997, pet. denied)).

Pipe Dogs fails to state a claim for contribution under § 33.015, which provides that "[i]f a defendant who is jointly and severally liable . . . pays a percentage of the damages for which the defendant is jointly and severally liable greater than his percentage of responsibility, that defendant has a right of

---

[28] Document No. 20 ¶¶ 46-47.

16

contribution for the overpayment against each other liable defendant." TEX. CIV. PRAC. & REM. CODE § 33.015(a). A claim for contribution under § 33.015 is "derivative of the plaintiff's right to recover from the joint defendant against whom contribution is sought" and depends upon whether the original plaintiff has the right to recover damages from the party from whom the defendant seeks contribution. Shoemake v. Fogel, Ltd., 826 S.W.2d 933, 935 (Tex. 1992); see also Werner v. KPMG LLP, 415 F. Supp. 2d 688, 706 (S.D. Tex. 2006) (Rosenthal, J.) ("Section 33.015 applies when a defendant asserts contribution rights as between codefendants; Section 33.016 applies when a defendant asserts contribution rights against others not sued by the plaintiff.").

Reactor Resources is not a joint defendant from whom Michels also seeks damages, and Pipe Dogs's citation of § 33.015 is therefore inapplicable. Accordingly, Pipe Dogs's claims for contribution under the common law and § 33.015 are dismissed, without prejudice to Pipe Dogs's pleading a contribution claim under § 33.016.

IV. Order

For the reasons set forth above, it is hereby

ORDERED that Pipe Dogs, Inc.'s Motion to Dismiss for Failure to Join a Required Party, Motion to Dismiss Plaintiff TransCanada USA Operations Inc.'s Complaint for Failure to State a Claim, and

Motion for a More Definite Statement (Document No. 19) are DENIED. It is further

ORDERED that Reactor Resources's Rule 12(b)(6) Motion to Dismiss and, in the Alternative, Rule 12(e) Motion for More Definite Statement (Document No. 27) is GRANTED in part, and Pipe Dogs, Inc.'s claims for breach of an implied warranty of adequacy (Spearin doctrine) and delegation of non-delegable duty are DISMISSED, and its contribution claim under TEX. CIV. PRAC. & REM. CODE § 33.015 is DISMISSED without prejudice to Pipe Dogs's pleading a contribution claim under § 33.016; and Reactor Resources's Motion to Dismiss and for More Definite Statement (Document No. 27) is in all other things DENIED.

The Clerk will enter this Order, providing a correct copy to all counsel of record.

SIGNED in Houston, Texas, on this 31ST day of December, 2019.

EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE

18